A93A0698. IN THE INTEREST OF A. R. B., a child.
(433 SE2d 411)

BEASLEY, Presiding Judge.

This is an appeal by a father from a final order of the juvenile court granting sole custody of the parties' then three-year-old son to the mother, with only rights of visitation in the father for two weekends a month, five-and-one-half days at Christmas, and three weeks in the summer. "Sole custody" embraces both legal custody and physical custody. OCGA § 19-9-6 (4). The court encouraged the parties to agree to additional visitation but they are not bound by law to do so. The case is before the court from the grant of the father's application for discretionary appeal, in which it was asserted that the court failed to properly consider the joint custody provisions of OCGA § 19-9-6.

1. At the time the application for appeal was filed, the father had also filed a motion for reconsideration of the custody order, which was pending in juvenile court. Reconsideration was sought on the same grounds asserted in the application, i.e., that the court abused its discretion in failing to award joint custody. After our grant of the discretionary appeal, the court entered a written order denying reconsideration. The parties disagree as to whether, on reconsideration, the court properly considered a joint custody arrangement.

We do not reach the merits of the second order because the juvenile court was divested of jurisdiction to act on the pending reconsideration motion after the application was filed. "The filing of an application for appeal shall act as a supersedeas to the extent that a notice of appeal acts as supersedeas." OCGA § 5-6-35 (h). That extent is set out in OCGA § 5-6-46. It has the effect of depriving the trial court of jurisdiction to modify or alter the judgment. *Turner v. Harper,* 233 Ga. 483 (211 SE2d 742) (1975); *Cohran v. Carlin,* 249 Ga. 510 (291 SE2d 538) (1982). It is noted, however, that the notice of appeal does not act as supersedeas except "upon payment of all costs in the trial

court by the appellant," OCGA § 5-6-46 (a), whereas there is no such requirement upon the filing of an application. OCGA § 5-6-35. The trial court costs do not have to be paid until the application is granted and the notice of appeal is filed.

A party seeking reconsideration but desiring the reservation of appellate review in the event reconsideration does not yield favorable results is not accommodated under our appellate scheme. The filing of a motion for reconsideration does not toll the 30-day period for applying for appellate review. OCGA § 5-6-35 (d). On the other hand, the filing of the application deprives the lower court of jurisdiction to reconsider. Motions for new trial, in arrest of judgment, for judgment n.o.v., or to set aside under OCGA § 9-11-60 (d), *do* toll the appeal period, so the jurisdiction-depriving application need not be filed within 30 days of the original judgment when one of these courses is followed.

Of course, a trial court has the inherent power to entertain a motion for reconsideration at any time within the term of court, OCGA § 15-1-3, so long as a notice of appeal has not been filed. But only if it is ruled on within 30 days can the party complaining have benefit of the court's reconsideration of the matter and still retain its right to appeal, which would be from the original judgment. If the movant is successful, then the respondent would have 30 days to appeal because the revised judgment would constitute a superseding one.

*Abrahamsen v. McDonald's Corp.*, 197 Ga. App. 624, 625 (2) (398 SE2d 861) (1990), held that the *grant* of the application is what acts as supersedeas. Instead, OCGA §. 5-6-35 (h) provides that it is the *filing* of the application, which of course occurs much earlier, that acts as supersedeas. The statute prevails. *Abrahamsen* relies for authority on the notice of appeal statute and a case applying it, but that is not what governs this aspect of the procedure.

Since the application was filed in this court on April 14, and the juvenile court's order was entered May 22, "nunc pro tunc, May 11" (the day of the hearing on the motion to modify and for reconsideration), the order is a nullity. We do not fault the trial court for proceeding in this regard, because unless the filing of an application was brought to the court's attention by the parties, the court would not know of it. Although a notice of appeal must be filed in the court "wherein the case was determined," OCGA § 5-6-37, putting that court on notice that its jurisdiction is affected, there is no such requirement regarding an application. The statute only requires it to be filed with the clerk of the appellate court. OCGA § 5-6-35 (d).

Good order and the prevention of wasted effort recommend that the statute be amended to require a copy of the application, without accompanying documents, to be filed also with the court appealed from, so as to give that court notice of the status of the case in the

event it contemplates further action.

2. The custody order demonstrates that the court failed to give proper consideration to the joint custody options available under OCGA § 19-9-6.

An express purpose of the 1983 Georgia Constitution as stated in the Preamble, is to "promote the interest and happiness of the citizen and of the family. . . ." This principle of government is expressly reflected in OCGA § 19-9-6, enacted July 1, 1990, which is an act of implementation specifically providing the court with options of awarding joint legal custody, joint physical custody, or both, where appropriate. Under such arrangements, both parents are given equal rights and responsibilities for major decisions concerning the child, or equal opportunity to be with and nurture the child, or both. The legislative intent is to afford greater equality between parents in fostering relationships with their children so that the best interests of each child can be served. It is correlated with the equal duty of the parents, generally, to support their child. OCGA § 19-7-2. Both evince a policy favoring equally shared parenting obligations and opportunities which places children first in the constellation of individual interests and desires.

The concept of shared parenting is further reflected in the 1990 amendment to OCGA § 19-9-3 (a), the statute relating to custody of minor children as between parents. Prior to 1990, it provided that no prima facie right of custody existed in the father. The 1990 revision states: "There shall be no prima-facie right to the custody of the child or children in the father or mother." The amendment also added to subsection (a): "Joint custody, as defined by Code Section 19-9-6, may be considered as an alternative form of custody by the court. This provision allows a court at any temporary or permanent hearing to grant sole custody, joint custody, joint legal custody, or joint physical custody where appropriate." OCGA § 19-9-3 was further amended in 1991, adding subsection (d): "It is the express policy of this state to encourage that a minor child has continuing contact with parents and grandparents who have shown the ability to act in the best interest of the child and to encourage parents to share in the rights and responsibilities of raising their children after such parents have separated or dissolved their marriage."

It thus is evident that the stated legislative policy abandons traditional biases and favors shared parenting rights and responsibilities. Where sole custody is awarded, custodial rights, responsibilities and opportunities lie only with the custodial parent who is solely responsible for "major decisions concerning the child, including the child's education, health care, and religious training. . . ." OCGA § 19-9-6 (4). The noncustodial parent is given only the right of visitation. Id. Where both parents have demonstrated equal ability to effec-

tively care for and nurture the child, as here, it is in the child's best interest that a custody award be fashioned which will best encourage continuing and roughly equal contact with both parents, given the practicalities involved. Joint *physical* custody, OCGA § 19-9-6 (3), should not be automatically rejected simply because the parents live in places distant from each other. It involves time and contact. School time at one location and vacation time and alternating weekends at another, for example, would more closely equalize the time each parent shared. Contact, of course, includes other means of communication. Joint *legal* custody does not require proximity, and where practicable, it enables both parents' involvement in making major decisions concerning the child. OCGA § 19-9-6 (2). In either aspect, cooperation is the key ingredient. If a mediator would ease the process initially or on a continuing basis, one should be employed. There is, after all, one total child, not two halves.

3. The evidence amply supports the juvenile court's findings that both parents have shared in the responsibilities of child rearing and that either is "perfectly capable of caring and providing for the child from this time forward." Both are highly educated, professional people who have shown deep devotion to their child and fitness as parents. It is apparent that this long-contested custody dispute is motivated by a fervent desire on the part of each parent to participate significantly in their son's future. A joint custody arrangement in these circumstances should have been given due consideration by the juvenile court in accordance with the State's expressed policy. Although the dispute is symbolized by a "versus" which signifies two adverse parties at opposite poles of a line, there is in fact a third party whose interests and rights make of the line a triangle. That person, the child who is not an official party to the lawsuit but whose well-being is in the eye of the controversy, has a right to shared parenting when both are equally suited to provide it. Inherent in the express public policy is a recognition of the child's right to equal access and opportunity with both parents, the right to be guided and nurtured by both parents, the right to have major decisions made by the application of both parents' wisdom, judgment and experience. The child does not forfeit these rights when the parents divorce. Whether a parent forfeits his or her portion of the relationship or any part of it, or is incapable of performance, must be determined by the factfinder.

The case is remanded for findings and conclusions which give effect to OCGA §§ 19-9-3 (d) and 19-9-6.

*Judgment reversed and case remanded. Cooper, J., concurs. McMurray, P. J., concurs in the judgment only.*

DECIDED JULY 2, 1993.

*Martha C. Christian*, for appellant.
*Lovett & Hicks, William E. Hicks*, for appellee.