**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 20, 2018**

# In the Court of Appeals of Georgia

A17A1610. FAISON et al. v. FAISON.

REESE, Judge.

Appellee Lora Faison filed a complaint for partition of real property against Bertine Faison, Appellants Sonya Faison, Daryl Faison, and Natalie Faison, and nine other legal heirs of Alonzo Faison. After entering default judgments against Bertine Faison, Appellants, and one other heir, the court entered a final order approving a settlement agreement between Appellee and the remaining eight heirs. Appellants seek review[1] of the trial court's denial of their motion to set aside the judgment and

---

[1] The Supreme Court of Georgia transferred the appeal to this Court because the notice of appeal was filed on January 6, 2017, after the January 1, 2017 effective date of OCGA § 15-3-3.1 (a) (1), which granted this Court original appellate jurisdiction over cases involving title to land. See Ga. L. 2016, p. 883, § 6-1 (c) ("Part III of this Act shall become effective on January 1, 2017, and shall apply to cases in which a notice of appeal . . . is filed on or after such date.")

for a new trial. For the reasons set forth, infra, we reverse the court's final order and remand for further proceedings.

According to the complaint for partition, Alonzo Faison died intestate in March 2000. At the time of his death, Mr. Faison owned seven tracts of real property, totaling approximately 400 hundred acres, in Wilcox County. Appellee further alleged that she and the defendants were heirs at law of the decedent and owned the property as tenants in common, that the property could likely not be fairly and equitably divided in kind, and that the property should be sold and the proceeds distributed among the parties.

After court-ordered mediation, Appellee filed a motion to approve and enforce a settlement agreement reached by the heirs who had participated in the mediation. Following a hearing, the court entered default judgments against Appellants, Bertine Faison, and one other heir due to their failure to answer Appellee's complaint.[2] The court noted that the action was one involving unliquidated damages and that the

---

[2] Although the notice of appeal stated that transcripts would be filed, the record on appeal does not include any transcripts. "[I]t is the burden of the appealing party to ensure that a complete record is transmitted to this Court on appeal[.]" Court of Appeals Rule 18 (b).

court, at the motion for default, had heard from all parties present, all of whom acknowledged an agreement as to the partitioning of the property.

The court separately entered a final order approving the terms of the agreement. In part, the final order directed Appellants to transfer their interest in the property to the Appellee in exchange for $13,000 each to be paid by Appellee to them.

Less than 30 days after entry of the final order, Appellants and Bertine Faison filed a motion to set aside the final order and for a new trial, arguing in part that the court had failed to order or submit an appraisal, as required by OCGA § 44-6-184 of the Uniform Partition of Heirs Property Act ("UPHPA")[3] and that thus, there was no evidence to support a determination of the fair market value of the property.

The trial court denied the motion for new trial, in part[4] on the ground that the non-defaulting parties had reached an agreement settling Appellee's suit, thereby partitioning the property without invoking the mandates of the UPHPA. The court concluded: "There was no such determination made regarding whether the property

---

[3] See OCGA § 44-6-180 et seq.

[4] It is suggested on the record that Bertine Faison died on the same day that the trial court signed the motion to set aside judgment, before the notice of appeal was filed. Because there has been no substitution of parties or guardian appointed for Bertine Faison, we do not address the separate issues that relate solely to her.

3

was heirs property because the case did not progress that far." Appellants challenge this order.

"Motions for new trial are available only to challenge some 'intrinsic defect' that does not appear on the face of the record or pleadings, and must generally be made within 30 days of the judgment being challenged[.]"[5] "[A]though generally "[w]e apply the 'any evidence' standard in reviewing a trial court's judgment on a motion for new trial and construe the evidence most favorably toward the party opposing the motion,"[6] we review questions of law de novo.[7] With these guiding principles in mind, we turn now to Appellants' specific claims of error.

1. Appellants argue that the trial court erred by failing to follow the mandatory procedures of OCGA § 44-6-181 (b), and that, even though they were in default, Appellee was not entitled to the partition in kind granted. Because the procedures of

[5] *Jones v. Jones*, 298 Ga. 762, 765 (1) (787 SE2d 682) (2016) ("Motions to set aside may be premised on a lack of jurisdiction; some allegation of fraud, accident, mistake, or acts of the adverse party unmixed with the negligence or fault of the movant; or a 'nonamendable defect' appearing on the face of the pleadings or record.") (citing OCGA §§ 5-5-40 (a) and 9-11-60 (a), (b)) (punctuation omitted).

[6] *James E. Warren, M.D., P.C. v. Weber & Warren Anesthesia Svcs.*, 272 Ga. App. 232, 237-238 (3) (612 SE2d 17) (2005) (citation omitted).

[7] *Fred Jones Enterprises v. Williams*, 331 Ga. App. 481, 482 (771 SE2d 163) (2015).

the UPHPA were not followed, Appellants contend the judgment undervalues the property, one of the very problems the UPHPA was designed to address.[8]

In 2012, Georgia became the second state[9] to adopt the UPHPA, which applies to partition actions filed in Georgia on or after January 1, 2013.[10] "UPHPA provides a series of simple due process protections: notice, appraisal, right of first refusal, and if the other co-tenants choose not to exercise their right and a sale is required, a commercially reasonable sale supervised by the court to ensure all parties receive their fair share of the proceeds."[11]

---

[8] See Rishi Batra, Improving the Uniform Partition of Heirs Property Act, 24 Geo. Mason L. Rev. 743, 757-759 (IV) (C) (2017); Crystal Chastain Baker and Shunta Vincent McBride, A Primer on Heirs Property and Georgia's New Uniform Partition of Heirs Property Act: Protecting Owners of Heirs Property, 19 Ga. Bar. J. 16, 18 (Oct. 2013).

[9] See Press Release, Uniform Law Comm. (Apr. 19, 2012) *http://www.uniformlaws.org/NewsDetail.aspx?title=Georgia%202nd%20State%20to%20Enact%20Uniform%20Partition%20of%20Heirs%20Property%20Act*; see also Ga. L. 2012, p. 97, § 1.

[10] OCGA § 44-6-181 (a).

[11] Partition of Heirs Property Act, Uniform Law Comm., *http://www.uniformlaws.org/Act.aspx?title=Partition%20of%20Heirs%20Property%20Act* (last visited January 22, 2018).

As of January 2018, a total of 10 states have adopted the UPHPA; bills to adopt the Act have also been introduced in Mississippi and the District of Columbia.[12] However, we have been unable to locate a single published appellate decision applying the UPHPA.[13]

Lora Faison filed this partition action on April 30, 2015, after the effective date of the UPHPA, which provides: "In an action to partition real property under Subpart 1 [Equitable Partition] or 2 [Statutory Partition] of this part, the court *shall* determine whether the property is heirs property.[14] If the court determines that the property is

---

[12] See id.; Batra, 24 Geo. Mason L. Rev. at 744, n. 20; see also Ala. Code § 35-6A-1 et seq. (eff. Jan. 1, 2015); Ark. Code Ann. § 18-60-1001 et seq. (eff. Jan. 1, 2016); Conn. Gen. Stat. § 52-503f et seq. (eff. Oct. 1, 2015); Haw. Rev. Stat. § 668A-1 et seq. (eff. Jan. 1, 2017); Mont. Code Ann. § 70-29-401 et seq. (eff. Oct. 1, 2013); Nev. Rev. Stat. Ann. § 39.600 et seq. (eff. Oct. 1, 2011); N.M. Stat. Ann. § 42-5A-1 et seq. (eff. Jan. 1, 2018); S.C. Code Ann. § 15-61-310 et seq. (eff. Jan. 1, 2017); Tex. Prop. Code § 23A.001 et seq. (eff. Sept. 1, 2017).

[13] Cf. *Barrow v. Myhand*, 205 So3d 1261, 1269 (Ala. Civ. App. 2016) (UPHPA did not apply because partition action filed prior to January 1, 2015).

[14] Under OCGA § 44-6-180 (5):

"Heirs property" means real property held in tenancy in common which satisfies all of the following requirements on the date of the filing of a partition action:

(A) There is no agreement in a record binding all the cotenants which governs the partition of the property;

heirs property, the property *shall* be partitioned pursuant to this subpart unless all of

the cotenants otherwise agree in a record."[15]

In light of the mandatory language[16] in OCGA § 44-6-181 (b), the trial court

erred in not making an initial determination, prior to ordering the parties to mediation,

whether the property was heirs property. If the trial court had concluded that the

property was heirs property, it would have been required to partition the property

pursuant to the UPHPA unless *all* of the cotenants, not just all of the non-defaulting

---

(B) One or more of the contenants acquired title from a relative, whether living or deceased; and
(C) Any of the following applies:
(i) Twenty percent or more of the interests are held by contenants who are relatives;
(ii) Twenty percent or more of the interests are held by an individual who acquired title from a relative, whether living or deceased; or
(iii) Twenty percent or more of the cotenants are relatives.

[15] OCGA § 44-6-181 (b) (emphasis supplied).

[16] See *Glass v. City of Atlanta*, 293 Ga. App. 11, 15 (2) (a) (666 SE2d 406) (2008) ("[I]n its ordinary signification 'shall' is a word of command, and the context ought to be very strongly persuasive before that word is softened into a mere permission.") (citation and punctuation omitted); see also *City of Marietta v. Summerour*, ___ Ga. ___ (3) (807 SE2d 324) (2017) ("[W]e must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.") (citation and punctuation omitted).

7

cotenants, otherwise agreed.[17] Accordingly, we reverse the denial of Appellants' motion for new trial and remand for further proceedings consistent with this opinion.

2. Based on our holding in Division 1, we need not address Appellants' remaining arguments.[18]

*Judgment reversed and case remanded. Miller, P. J., and Doyle, P. J., concur.*

---

[17] See Thomas W. Mitchell, Reforming Property Law to Address Devastating Land Loss, 66 Ala. L. Rev. 1, 50 (IV) (E) ("[A]n agreement in which the cotenants establish the value of the heirs property themselves or another method of valuation must be an agreement reached by all of the cotenants. A court cannot accept such an agreement even if the only cotenants who did not agree are unknown, unlocatable, or otherwise are cotenants who remain unascertained.").

[18] As noted above, Bertine Faison is not a party to this appeal. See footnote 4, supra. Accordingly, we do not address Appellants' argument that the trial court committed harmful error in failing to find that she was intellectually disabled within the meaning of OCGA § 44-6-171.